No. 22,705.

W. C. SHUMATE, and SADIE WAUGH as Administratrix of the Estate of JOHN Y. WAUGH, Deceased, *Appellees,* v. B. F. BLYTHE, *Appellant.*

### SYLLABUS BY THE COURT.

DEMURRER TO EVIDENCE—On the facts stated in the opinion, *held,* it was error to sustain a demurrer to defendant's evidence in support of his answer and cross petition.

Appeal from Wabaunsee district court; ROBERT C. HEIZER, judge. Opinion filed December 11, 1920. Reversed.

*Tinkham Veale, A. E. Crane,* both of Topeka, and *J. E. Crawford,* of Eskridge, for the appellant.

*C. E. Carroll,* of Alma, *Bennett R. Wheeler, S. M. Brewster,* and *John L. Hunt,* all of Topeka, for the appellees.

The opinion of the court was delivered by

PORTER, J.: Plaintiffs brought this action in replevin to recover half of the crops for the year 1914 on eight hundred acres of land in Wabaunsee county, known as the Drum ranch. The defendant filed an answer and cross petition, and the appeal is from an order sustaining a demurrer to his evidence.

It seems that in 1913 the plaintiffs had sold the ranch to the defendant and that he had made payments to the amount of $3,000 on the purchase price. In February, 1914, it became apparent that he could not make the further payments; he was in possession and the time had come to make arrangements for farming the land for that year. The plaintiffs apparently desired to lease the property to him and also to have him surrender his contract for the purchase. The parties therefore entered into three separate written agreements, executed simultaneously and dated February 17, 1914. One of the agreements recites:

"Whereas, the said party of the first part (Blythe) has a contract for deed upon the premises known as the Drum farm, at or near Eskridge, Kansas, signed by said parties of the second part, . . .

"Now therefore, it is agreed that in consideration that the said B. F. Blythe surrender and cancel said contract without litigation, the said parties of the second part will agree as follows:"

It provided further that the plaintiffs would execute a lease for Blythe for that year and "also agree to enter into a written contract" with him authorizing him to sell the land at any time up to January 1, 1915, at a certain price; that they would cancel all claims for interest against him on the contract and surrender to him a certain note. The separate agreement for the sale of the land gave Blythe the right and privilege to the 1st day of January, 1915, to sell "providing he can make said sale for the sum of $36,000 in cash, net to" Shumate and Waugh; that upon the completion of the sale the plaintiffs would furnish a good and sufficient abstract and deed to the purchaser, and that in case the sale was completed on or before the 1st day of October, 1914, plaintiffs were to accept the interest on the $36,000 from the date of the contract to the date of the sale in lieu of one-half the crop. The third instrument was the lease upon which plaintiffs brought their action to recover the crops.

The defendant in his cross petition set up copies of the three instruments and alleged that by their terms he was given the exclusive right to sell the land at any time before January 1, 1915, upon payment to them of $36,000 cash, net, and he was to have all money or consideration received for the sale in excess of that sum; that he spent time and money in finding a purchaser and in March, 1914, procured a buyer who was ready, willing and able to pay the lessors in cash, net to them, the sum of $36,000 and to give the defendant, in addition thereto, for his own use and benefit, a leasehold on certain real estate in Kansas City, Mo., subject to a mortgage, but which would leave a valuable equity therein to the defendant; that he informed the plaintiffs that he had found a buyer that would pay them the sum of $36,000 net in cash to them, and that he desired to exercise his option under the lease, but they refused to deliver an abstract or to deal further with him, and that they refused to convey the property, and that by reason of the breach of the contract he was prevented from complying with the terms of the lease and had sustained damages to the amount of the value of the equity in the Kansas City property.

The defendant testified that he made an effort to find a buyer of the land, and through Mr. Ritter, a real-estate man of Kansas City, found J. H. Van Closter and Joseph A. Haynes,

of Philadelphia, who went with him to view the ranch and who said they were satisfied with it and that they agreed to take the farm and to pay to the plaintiffs the sum of $36,000 together with interest thereon to the date of the sale; that they agreed to convey to him a long-time lease on an apartment in Kansas City, Mo.; that by the arrangement he was to give to the purchaser of the ranch a mortgage for $36,000 on the Kansas City property to offset the money paid by them to the plaintiffs.

J. H. Van Closter testified that he was introduced to Blythe by Ritter; that Joseph A. Haynes, who was associated with him in a number of real-estate transactions, accompanied him to the Drum ranch to investigate it and had agreed to go in with him on the deal and to advance the $36,000 to the fee-title holders of the ranch and they had agreed to convey to Blythe their 94-year lease on the Kansas City property; that the deal was never consummated for the reason that Blythe was never able to deliver the title. He testified that the Kansas City property, which was to be conveyed to Blythe, consisted of three lots with six seven-room apartments and a hotel building consisting of eighty-five rooms, also a vacant space on the corner one hundred feet square; that the lease had 94 years to run, and that the property had a gross income of $4,800 a year or $3,000 net; that there were improvements on the property of the value of $75,000 which secured the rentals; that the fair and reasonable value of the leasehold he agreed to convey to Blythe was $50,000; that if the deal had been carried through the defendant would have received net to him the difference between the value of the leasehold and the mortgage of $36,000 carried back thereon, which would amount to $14,000; that Blythe told him it was necessary for him to put up the $36,000 to get the title and showed him the contract with the plaintiffs authorizing him to sell it.

Ritter, the real-estate agent, testified to the effect that Haynes agreed to advance the money to pay to Waugh and Shumate and to exchange the leasehold for the farm and to take back from Blythe a mortgage on the leasehold. Several other witnesses testified to the value of the Kansas City property and to the ability of Van Closter and Haynes to carry out their agreement.

Shumate v. Blythe.

The defendant testified that immediately after the arrangement had been made for the sale of the property he notified the plaintiffs that he had sold the farm and had a purchaser who was ready, willing and able to buy the farm and pay the $36,-000, and asked that the plaintiffs have the deeds ready, and asked for the abstract so that it might be examined; that in reply Shumate said they wouldn't bother with it; that they were going to Texas and couldn't bother with the matter. After the plaintiffs had returned from Texas, Blythe had another conversation with Shumate in which he asked for the abstract and told him that he would like to send it to the party that was buying the land and Shumate said he would not furnish the abstract. In a third conversation he told Shumate that he would be obliged to sue and Shumate said they welcomed a lawsuit, that he had better keep his money, that he would not have much when they got through with him. He was corroborated by his son who was present at all the conversations.

We think the written instruments, taken together, should be construed as entitling the defendant to any excess that might be received from a sale of the property above the $36,-000 net to the plaintiffs. His relation to the property was not merely that of the ordinary real-estate broker with whom property is listed and who has no other interest in the transaction except to find a purchaser and earn his commission. The contract by which Blythe was authorized to find a purchaser recognized that he had held some equitable rights in the property, and his agreement to waive these rights furnished a part of the consideration for the contract. He was in possession of the property under a lease that bound him to do certain things and his obligations would be materially altered and changed to his advantage by a sale completed before it was necessary to cultivate the crops.

The plaintiffs insist that the defendant was to procure a sale of the ranch, but proposed to trade their property for the Kansas City property and take title to that in his own name, then mortgage it to raise the money to pay them. The demurrer admits all the facts shown by the defendant's evidence, aided by every reasonable inference which might be drawn from them. It is a fair interpretation of the evidence to say that it

tends to show that Blythe had found purchasers ready, able and willing to buy the ranch for $36,000 and to pay that sum in cash to the plaintiffs upon the delivery of their warranty deed and an abstract showing a merchantable title. The testimony was that the purchasers understood that it was necessary for the money to be paid in cash and that they were ready, able and willing to advance the cash to the plaintiffs, and convey to the defendant title to the Kansas City property and take back from him a mortgage for the same amount. The plain inference from the testimony is that it was the intention to have all the conveyances ready for delivery at the same time, and if the transaction had been carried out, as the testimony tends to show it would have been except for plaintiffs' refusal, they would have received their price in cash when the deed was delivered, and so far as their interests could be affected the transaction would have constituted a sale. What happened afterwards would not concern them. It is an everyday occurrence for a bank or an investment company to advance the purchase money to the buyer of land and to take a mortgage back on the land, which is prepared and executed simultaneously with the deed so that it takes effect at the same time and is usually recorded with the deed. The seller has no interest in the mortgage transaction. It is true that the ordinary agreement of a broker to find a purchaser for cash is not complied with by finding someone willing to trade or exchange property, but for the reasons stated that rule would not apply to the facts in this case.

It is said that the defendant never tendered to plaintiffs the interest on the $36,000 in lieu of the rent. It was not necessary for him to tender it until the sale was completed.

It is further insisted that Blythe failed to prove that he had an enforceable contract with the purchaser he claims to have found; that all he had was an oral arrangement and he should have shown that it was in writing. But this contention is not sound because an agent to find a purchaser is entitled to his commission when he produces a purchaser ready, able and willing to take the property on the agreed terms, and in the ordinary contract he has no authority to make a binding contract in writing. A number of other technical reasons are suggested, among them that the evidence shows that Blythe did

Klapper v. Mining Co.

not state to the plaintiffs the name of the purchaser. Assuming for the purposes of the argument that they were entitled to the information if they desired it, the evidence shows that they did not ask who the purchaser was but simply declined to carry out their part of the contract and that they stated no ground for their refusal to furnish the abstract and deed except that they did not care to bother with the matter. Both parties attach more importance to the terms of the contract respecting the furnishing of the abstract than we think it deserves. It was not the mere failure to comply with a request for an abstract; it was their flat refusal to take any steps to comply with their part of the contract, and without stating any reason therefor. If it be true that plaintiffs were unwilling to intrust their agent with an abstract worth probably $10 or $15 they should have so informed him.

The judgment is reversed and the cause remanded with instructions to overrule the demurrer.